## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

DEC 2 3 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Tracy H. Luellen                )
7100 Bunker Hill Road           )
The Plains, VA  20198           )
    Appellee/Plaintiff

Vs.

Scott E. Luellen
2017 Allen Place, NW
Washington, DC 20009
Tel. (202) 460-5155
    Appellant/Defendant    )
                )

CASE NUMBER  1:05CV02464

JUDGE: Richard J. Leon

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 12/23/2005

---

## MOTION FOR AN EMERGENCY STAY.
## IN THE ALTERNATIVE, MOTION FOR PRELIMINARY INJUNCTIVE RELIEF
## AND TEMPORARY RESTRAINING ORDER
## REQUEST FOR EXPEDITED CONSIDERATION

COMES NOW, Scott E. Luellen, Appellant/Defendant, *Pro Se,* in the

above-styled and numbed case from the 20th Judicial Circuit of the

Commonwealth of Virginia (Fauquier County), hereby moves the Court for an

immediate temporary stay of the Judgment entered by the 20th Judicial Circuit, in

the alternative, Appellant moves this honorable Court issue preliminary injunctive

relief and/or a temporary restraining order (TRO) and that such stay, injunctive

relief or order be given expedited consideration to prevent the unlawful detention

of appellant and violation of his Constitutional rights, and rights guaranteed him

under Federal statutes and case law.

Procedural History

1.      On January 25, 2005, the 20th Judicial Circuit of Virginia

        endorsed a decree ending the marriage and agreeing a

        comprehensive financial settlement between the parties with:

    a.  Combined monthly support payments of $14,000 per month for

        approximately four (4) years;

    b.  Three lump-sum payments in lieu of equitable distribution would

        be treated as 'support' to make them non-dischargeable, of

        $75,000, $125,000 and $40,000;

    c.  The decree did not allow for a material change in circumstances;

2.      On May 17, 2005 and May 25, 2005, respectively, Appellant

        failed to make the second and third lump-sum payments of

        $40,000 to Plaintiff's creditors and $125,000 payment to Plaintiff;

        however, all monthly support payments were current.

        Defendant conceded the missed payments and noted his

        inability to pay because of a default by a third-party to his

        employer; the Court then held Appellant in indirect/plenary civil

        contempt on June 6, 2005 **for failure to pay, WITHOUT ANY**

        **SPECIFIC FINDING whether he had the ability to pay or**

        **refused to pay**, and imposed and suspended local detention,

        for the express purpose of giving Appellant the time he believed

        would be necessary for his employer to cure the default; and

scheduled an 'update hearing' for September 6, 2005 to learn
how that process was proceeding;

3.    'Update hearings,' continuances of the original Show Cause,
were held in September, October, November and December
2005; in each case, the Court heard updates about additional
payments made and progress on Appellant's employers
transactions to provide funds to Appellant to pay the remaining
balance; in each case, Defendant/Appellant preserved his
objection to the original order and argued orally his inability to
pay and in each hearing provided or offered additional
independent evidence of it;

4.    On December 6, 2005, the Court ruled Appellant to voluntarily
report to County detention for 150-days beginning at 5:00 PM
that day if payment had not been made; because payment was
imminent according to the best information available to
Appellant and his participation was required to complete the final
transaction and purge the contempt, he did not report; on 8 Dec
2005, the Court issued a *capias* for indirect/plenary civil
contempt, NOT for non-appearance;

5.    The US Court for the District of Columbia has jurisdiction
because: a) Appellant is a citizen of the District of Columbia; b)
Appellant pleads detention on grounds of inability, not refusal, to
pay violates his Constitutional rights; c) Appellant pleads the

Court's refusal to hear or review evidence offered violated his Constitutional rights; to secure an emergency stay or injunctive relief, movant must only show 'good cause,' not even a likelihood of success, that Appellant will be irreparably and imminently harmed, that Appellee will not be harmed, and the issues are <u>Federal questions</u> that impact a broad public interest; including:

a.  Is it Constitutional, or does it violate Federal statues and/or case law for a State Court to issue detention for indirect/plenary contempt without any finding regarding ability to pay?

b.  Is it Constitutional, or does it violate Federal statues and/or case law for a State Court to order detention in a case of plenary/indirect civil contempt SOLEY for failure to pay a civil judgment (i.e., NOT ability and refusal to pay)?

c.  Is it Constitutional, or does it violate Federal statutes or common interest for a State Court to treat equitable distribution as if it were monthly support when monthly support is current?

d.  Is it Constitutional, or does it violate Federal statutes and/or case law for a State Court to issue detention in a case of plenary/indirect civil contempt after refusing to accept evidence regarding inability to pay?

e.  Is it Constitutional, or does it violate Federal statutes and/or case law for a State Court to issue detention in a case of

plenary/indirect civil contempt after it admits on the record that it appears the Appellant/Defendant is unable to immediately and timely pay?

f.   Is it Constitutional, or does it violate Federal statutes and/or case law for a State Court to issue detention in a case of plenary/indirect civil contempt without advising an indigent litigant of his/her right to appointed counsel?

g.   Is it Constitutional, or does it violate Federal statutes and/or case law for a State Court to issue detention in a case of plenary/indirect civil contempt without considering on the record whether a litigant unable to pay should be appointed counsel?

h.   Is it Constitutional, or does it violate Federal statutes and/or case law for a State Court to issue detention in a case of plenary/indirect civil contempt wherein Plaintiff's counsel concedes on the record (and/or Plaintiff concedes) contemnor appears unable to pay?

i.   What standards of proof must a State Court set to comply with the Constitution and Federal statues and/or case law regarding inability to pay in cases of detention for plenary/indirect civil contempt?

j.   If a contemnor offers to a State Court to identify any evidence or documents which it would find acceptable to be satisfied

contemnor is unable to pay and the Court refuses to identify the

evidence it would require, is it Constitutional?

6.      This Motion for is not procedurally barred because Appellant

noted his objection to the original order, verbally objected to the

December 6, 2005 order, on the record, and at every hearing in

the continued Show Cause since has repeated his objection

because of inability to pay, including filing briefs with the Virginia

Court, which it acknowledged, it had not read, and his signature

of the June 6 and December 6 orders to further preserve his

objection was waived by the Court without consent; further, the

arguments made herein are for "good cause" and to pursue the

ends of justice and greatly in the publics' interests;

7.      This Motion is timely because it was filed by Defendant within

30-days of the final order of a state Court;


Arguments

8.      This Motion for Stay should be granted because:

    a. **Failure to Pay Cited, Not Ability and Refusal to Pay** -

        Appellant demonstrated his inability to pay without rebuttal,

        conceded via statements and orders from Plaintiff, Plaintiff's

        counsel and the Court, and Appellant was found in indirect civil

        contempt for failing to pay (language of the order), not refusal to

pay, which violates his Constitutional rights, Federal and state law and laws of the case;

b. **Denial of Right to Present Evidence** – Appellant attempted to present evidence on numerous occasions, including Oct 4, 2005, and the Court went on the record in disallowing and refusing to review evidence demonstrating inability to pay and sources of potential future funds being loans from his employer;[1]

c. **Absence of Required Procedural Protections** – Appellant was *Pro Se* for at least four (4) hearings when detention was an outcome and was never advised of his right to have counsel assigned in said circumstances and thus, was denied procedural protections to which he was rightfully entitled, thus denying him equal protection under the law;

d. **Addresses Federal Questions Exclusively** – At question is whether State Courts may and did make orders violating Constitutionally-protected rights, Federal statutes and/or Federal case law;

e. **Administrative Options Exhausted** – Appellant argued this matter on as many as five (5) occasions offering new and additional evidence

9.    The following independent evidence was presented to the Court during the Show Cause hearings to support inability to pay:

---

1 This exact issue arose in *Street v. Street*, 24 Va. App. 44, 480, S.E. 2d 118 (1997), wherein the Court of Appeals reversed the trial court for refusing to allow the Defendant to present evidence of his inability to pay during a hearing to support his defense to a contempt finding.

a. Correspondence from his employers partner confirming a default by a third-party to Appellant's employer caused the missed lump-sum payment;

b. Copies of the agreements between third-parties and Appellant's employer which were relied and defaulted upon causing the missed lump-sum payment;

c. Bank records for 2005 from the company provided to Plaintiff and offered to Court showing unavailability of funds;

d. Bank records for 2005 of Appellant offered to the Court and refused;

e. Any additional documents desired by the Court in Appellant's custody, control or possession were offered and not accepted or wanted by the Court;

10.      In May 2005, Appellant pleaded he was unable to pay/impossibility of performance, introduced evidence to support that claim and no rebuttal evidence was presented to contradict it; where after, the Court made no finding regarding whether the Appellant could pay or not, it held him in contempt because of non-payment, not ability and refusal to pay;

11.      In May 2005 the Court remarked that it appeared Appellant did not have the means to pay and may not have had them when entering into the decree; evidencing the Court's belief that

delayed performance was neither willful nor intentional,
requirements to be held civil contempt for non-payment;

12.    In October 2005, Plaintiff's counsel stated on-the-record and in
open Court that Appellant was working extremely diligently to
get the funds (inversely that he did not have the funds) and
conceding delayed payments by Appellant were neither willful
nor intentional;

13.    In September, October and November 2005, the Court
repeatedly accepted the fact that additional time was needed for
Appellant's employer to complete transactions to secure the
funds, demonstrating the Court' belief that Appellant did not
immediately have the funds for payment therefore non-payment
could be neither willful nor intentional; conversely, if the Court
believed payment was immediately possible, it would have
directed Appellant to make payment and refused continuances,
nor would it have asked for updates on the transactions pending
with the Appellant's employer;

14.    On numerous occasions, including October 4, 2005, the
transcript of which is attached hereto and included by reference
here, offered or provided evidence that ALL funds provided to
date, approximately $131,000 prior to the contempt finding and
$82,000 after the contempt finding, were borrowed, including
copies of the transactional documents; it is unconstitutional for

any Court to require a party to become indebted to pay a civil
judgment, if borrowing is the only way a debt may be paid, then
the party, for the purposes of the Court, is unable to pay;

15.    US case law states that "a movant is underlined entitled to injunctive relief if
either a) the balance of hardship tips sharply in movants favor;
OR b) a possibility of irreparable injury exists"2 to movant; in this
case, both conditions are met because Appellant's liberty is
being threatened which is attached to his ability to complete the
only transactions for his employer that will purge the contempt,
while Appellee has received over $200,000 in cash year-to-date
and has been generously provided for by Appellant;

16.    Appellant offered the Court on October 4, 2005 (as evidenced
by the attached transcript) copies of the transactional
documents showing assets being sold by his employer to
provide funds to Appellant and the Court affirmatively refused to
review the documents depriving Appellant of his rights under
due process to present evidence;

17.    Plaintiff concedes in writing Appellant requires a transaction with
his employer (inversely that he cannot immediately pay the
balance otherwise) and refuses to assist in any way, to insure
Appellant can meet with the necessary parties to complete the
transaction (Exhibit attached hereto and included by reference
here, e-mail dated 21 Dec 2005);

---

2 *Alaska v. Venetia*, 856 F.2d 1384 (9th Circuit, 1988); at 1389.

18.     From May 2005 to December 2005, approximately $126,000 was paid from Appellant to Plaintiff; however, on demand by the Plaintiff, none of those payments were credited toward the oldest outstanding balance of $165,000; it was improper to credit these amounts toward new payments not before the Court in a Show Cause, they should have been applied to the oldest outstanding debt to purge the contempt citation;

19.     Plaintiff's zeal in prosecuting the Show Cause, even after acknowledging the funds are not immediately available to Appellant, is fueled in-part by anger and the desire to punish her ex-husband for ending the marriage, as evidenced by Court-appointed psychologist Dr. Benjamin Schutz, who, after completing over 100 hours of study of the parties and psychological testing, concluded that Plaintiff has repeatedly been the sole party instigating and inciting conflict to fulfill some emotional need; whereas, Appellant/Defendant has repeatedly worked to avoid and resolve conflicts instigated, incited and continued by Plaintiff/Appellee;

20.     In recent years, the Supreme Courts of Georgia, Florida, Texas, Mississippi, Maryland, Vermont, West Virginia and Alaska (and appellate courts in Alabama, and New Jersey) have all decided issues raised by this appeal to the Appellant's favor -- see Table of Authorities for cases;

21.     "Incarceration for civil contempt is an inappropriate remedy to

enforce a child-support order against an impoverished party.

Civil contempt should be reserved for situations in which the

contemnor is refusing at that instant to take some action within

her control to comply with the court's order.  The classic

example of justified incarceration for civil contempt is a party

who refuses to answer questions as instructed by a judge, the

party is held in contempt and incarcerated, but the party can

obtain her own release by choosing to answer the questions.

Incarceration may be appropriate for the stereotypical "deadbeat

dad," who has income and assets to pay child support but

stubbornly refuses to pay.  Incarceration for civil contempt is not

appropriate for a "destitute dad" or "destitute mom," who has no

ability to secure her own release from jail by paying a contempt

purge amount."

22.     The Constitutions of the United States and the Commonwealth

of Virginia prohibit any agency of the state from creating debtor

prisons, in which indigent parties who owe a civil debt are

punished with incarceration.

23.     The United States Supreme Court has stated unequivocally that

a contemnor who is incarcerated for civil contempt must hold the

keys to the jail in his pocket:  the contemnor must have the

demonstrated means within his control to take some action that

will secure his release from jail.3  Appellant cannot, nor has any

evidence been introduced to rebut Appellant's evidence that he

cannot.

24.    When "inability to pay" equates to "inability to secure one's own

release from jail," then "inability to pay" unambiguously becomes

an **absolute** defense to incarceration for civil contempt under

US Constitutional law.4

25.    The use of the word "support" cannot by usage alone disguise

what are payments in lieu of equitable distribution under the

decree, especially when a monthly support payment of $14,000

is expressly agreed under the degree for the benefit and welfare

of the Appellee which are not being contested in this matter and

are not a subject of the Rule to Show Cause and have been

paid;

26.    The missed payments are not support in the common-sense

meaning of the word, they are equitable distribution; civil

contempt for non-payment of support is markedly different than

non-payment of equitable distribution, especially when

involuntary;

27.    There was no proof, or even evidence offered or considered or

any findings on the record, as required, that Appellant had in his

possession sufficient funds to pay the remaining judgment

---

3 See Shillitani v. United States, 384 U.S. 364 (1966).
4 See Shillitani v. United States, 384 U.S. 364 (1966).

against him; in fact, the evidence was that the Appellant had

funds only to pay his living expenses and other obligations

under the decree;

28.    A *debtor prison* occurs when a party owes a *civil* debt to another,

that party lacks the income or assets to pay that debt regardless

of whether the inability to pay is willful or involuntary, and a court

sentences the party to prison with or without a purge clause

calling for payment, which the party could not afford to pay in

any event.  The United States abandoned the practice of

creating debtor prisons in the 1830s and 1840s;

29.    Under other, neighboring jurisdictions, this issue has been

examined in some detail, concluding "Our review of the case law

regarding the issue of incarceration for contempt convinces us

that there can be no imprisonment for civil contempt <u>without a</u>

<u>finding that the contemnor has the ability to comply with the</u>

<u>required order</u>."  *See Leonard v. Leonard*, 207 Tenn. 609, 341

S.W.2d 740, 743-44 (Tenn.1960), *Going v. Going*, 148 Tenn.

522, 256 S.W. 890, 899 (Tenn.1923).  <u>"The contemnor cannot</u>

<u>be forced to borrow the funds, nor can his family be forced to</u>

<u>satisfy his duty</u>."  *Stevenson v. Stevenson*, No. 01A01-9701-CV-

00032 (Tenn. Ct. App., 1998) (citing *Netherton v. Netherton*,

1993 WL 49556 (Tenn. Ct. App. 1993))."

30.    In the only case heard by the US Supreme Court regarding late or unpaid balances resulting from divorce decrees,5 the Supreme Court stated in its opinion: "Our precedents are clear, however, that punishment may not be imposed in a civil contempt proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order." *United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983); *Shillitani*, supra, 384 U.S., at 371, 86 S.Ct., at 1536; Oriel, 278 U.S., at 366, 49 S.Ct., at 175.

31.    This case law indicates that under a *civil* contempt order, the appellant could not be jailed <u>absent proof in the record</u> that she actually possessed <u>the total funds</u> necessary to purge her contempt and secure her own release <u>at the instant of incarceration</u>; **no evidence was ever introduced nor offered to support Appellant had the ability to meet one, let alone all three, of these required conditions;**

32.    In a neighboring jurisdiction, the Court of Appeals has ruled "We are not certain what to call the lower court's contempt order. It has aspects of both civil and criminal contempt. It appears to be more civil, however, because it appears to be designed to induce the husband to perform some act or acts for the benefit of the wife. Assuming that we are correct about that, <u>an</u>

---

5 <u>Hicks on Behalf of Feiock v. Feiock</u>, 485 U.S. 624 (1988)

essential element of civil contempt is the ability to perform the

act ordered by the court. *State ex rel. Wright v. Upchurch*, 194

Tenn. 657, 254 S.W.2d 748 (1953); *Gossett v. Gossett*, 241

S.W.2d 934 (Tenn. App. 1951). . . . There is no finding in the

record that the husband has that ability. . . . So, the sentence

cannot stand as civil contempt."6

33.     The Virginia Court failed to identify some action or instruction by

the Court that the Appellant was willfully refusing to obey; on the

contrary, the Court stated it appeared he needed transactions

involving his employer to be completed to pay any significant

sum, in essence, conceding Appellant's late payment of part of

the judgment was neither willful nor intentional;

34.     The Virginia Court cited no finding that the contemnor had the

present ability to comply prior to the finding of contempt NOR

has there ever been a finding, or evidence introduced to support

a finding, that Appellant has the immediately ability to entirely

purge said contempt, as required by volumes of case law;

35.     Appellant, during one phase of the continued hearing, offered

the Court any additional evidence or document within his

possession, custody or control to further and maximally

---

6 *Walker v. Walker,* No. 02A01-9209-CH-00263 (Tenn. Ct. App. 1993) (*aff'd* 914

S.W.2d 887 (Tenn. 1996)).

demonstrate that Appellant's inability to immediately pay the balance was involuntary and the Court refused to identify any documents or evidence desired;

36.     Absent a stay from this Court, Appellant will be irreparably harmed via detention, and loss of the business transaction he must complete to purge the contempt;

37.     The potential harm to Appellant greatly outweighs any impact to Appellee who shall still receive the balance of the judgment, ironically more timely with a stay than without;

38.     As evidenced by the line of State and Federal cases, it is against the public interest to detain debtors of whom there has been no evidence introduced regarding their ability to pay; no judgment ordered or rendered regarding their ability to pay; about whom only evidence has been presented that as much as could be paid has been paid; and, whom was denied the right to introduce evidence regarding the source of payments;

39.     Granting a stay is also in the publics' interests because it encourages, rather than discourages, debtors to do all that is humanly possible and to continue working toward paying the obligation instead of punishing them for a paying the vast majority and working diligently toward the balance.

Relief Sought

40.    Because of a) evidence provided and offered to the Court, including statements by the Virginia Court, Plaintiff and Plaintiff's counsel conceding Appellants inability to immediately pay; b) no record of any finding by the Virginia Court that Appellant's partial late payment was willful nor intentional; and, c) no record of a finding by the Court regarding the Appellant's ability to pay thereafter to purge detention for contempt;

41.    Because Appellant was denied the right to present evidence on 4 Oct 2005 and therefore his ability to further demonstrate his inability to pay timely and evidence supporting the source and timing of availability of funds from his employer (as evidenced in the Oct 4, 2005 transcript when Appellant asked if evidence could be presented and the Court stated "No" that the Court did not wish to review it but would put it in the file);

42.    Because irreparable harm will come to Appellant contemporaneously absent a stay until such questions can be properly reviewed before the Court;

43.    Because Appellant neither willfully nor intentionally defaulted, nor was their any finding of ability to pay and refusal;

44.    Because Appellant does not have at the time of incarceration all the necessary funds needed to purge civil contempt;

45.    Because monies to purge any contempt were provided in majority and not credited against said balance;

46.    Because of the line of cases and supporting law noted herein;

47.    Because <u>granting of this Motion has no adverse affect on Appellee</u>, providing defending a motion on its merits is not 'harm;' because it is a stay or injunctive relief until issues noted in this Motion can be reviewed; ironically, the stay because it will result in Defendant's continued liberty to complete a transaction for his employer presently near completion it will benefit Appellee, because it will likely afford the opportunity to purge any contempt via payment, resolving the remaining balance and allowing the case to be closed; granting the stay or injunctive relief does not deprive Appellee of recourse, funds nor does it change the timing for delivery of funds as soon as possible; conversely, granting the stay or injunctive relief insures the fair and Constitutional application of the law;

48.    Because this case raises questions being addressed by varying standards in Courts across the Commonwealth and United States daily regarding whether a State Court has to have a finding on the record of contemnor's ability AND refusal to pay to detain him; the standards of proof for plenary/indirect civil contempt and ability to pay, what findings a Court must make regarding ability to pay, the impact of a Court refusing to accept

evidence of a Defendant's inability to pay, and Defendant's right to representation by counsel in civil matters that result in detention;

49. Appellant prays this honorable Court stay enjoin and/or issue a temporary restraining order of the Virginia court's findings of civil contempt and suspend the resulting *capias* until the Court can be fully briefed with complete pleadings and arguments until the final determination of this new case;

50. That in the alternative, Appellant prays this honorable Court temporarily stay, enjoin and/or issue a temporary restraining order of the Virginia court's findings of civil contempt, for a period of sixty (60) days to allow these issues to be scheduled and argued at a minimum, in an evidentiary hearing;

51. Appellant prays this honorable Court, upon granting either stay, direct suspension of the *capias* and resulting entry into the National Crime Information Center (NCIC) database;

52. Appellant respectfully requests this honorable Court rule on this stay, preliminary injunctive relief and/or restraining order without the formality of a hearing and immediately upon receipt or such similar expedited consideration as the Court deems appropriate.

Very Respectfully,



Scott E. Luellen, *Pro Se*
Appellant/Defendant
2017 Allen Place, NW
Washington, DC 20009
Tel. (202) 460-5155
Fax (202) 342-5299

# TABLE OF AUTHORITIES

## U. S. Supreme Court Cases

1.  *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624 (1988)
2.  *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 829, 129 L. Ed. 2d 642, __ 114 S. Ct. 2552, __ (1994)
3.  *Shillitani v. United States*, 384 U.S. 364 (1966)
4.  *United States v. Bajakajian*, 118 S.Ct. 2028, 2046 (1998) (Kennedy, J., dissenting)

## U. S. Courts of Appeals Cases

1.  *Banks v. United States*, 614 F.2d 95, 100 n.13 (6th Cir., 1980)
2.  *United States v. Campbell*, 73 F.3d 362, ____ (6th Cir.,1995)

## Cases from the Commonwealth of Virginia

1.  *Street v. Street*, 24 Va. App. 44, 480 S.E. 2d 118 (1997)
2.  *Kessler v. Commonwealth*, 18 Va. App.14, 441, S.E. 2d 233 (1994)

## Cases from Other States

1.  *Bendixen v. Bendixen*, 962 P 2d 170 (Alaska 1998)
2.  *Bresch v. Henderson*, NO. 2D00-1193, (Fla. 2d DCA 2000))
3.  *Clark v. Manning*, 721 So.2d 793, 794-795 (Fla. Ct. App. 1998)
4.  *Ex parte Rojo*, 925 S.W.2d 654 (Tex. 1996)
5.  *Gregory v. Rice*, 727 So. 2d 251 (Fla. 1999)
6.  *Hughes v. Dept. of Human Resources*, 269 Ga. 587, 502 S.E.2d 233 (Ga. 1998)
7.  *In re Amendments to the Florida Family Law Rules of Procedure*, 723 So. 2d 208 (Fla. 1998)
8.  *In re Luebe*, 983 S.W.2d 889 (Tex Ct. App. 1999)
9.  *In Re: Nichols*, 749 So. 2d 68 (Miss. 1999)
10. *Jones v. Hargrove*, 516 So. 2d 1354 (Miss. 1987)
11. *Lynch v. Lynch*, 342 Md.509, 677 A.2d 584 (1996)
12. *Savage v. Ingram*, 675 So. 2d 892, __ (Ala. Civ. App. 1996)
13. *Sheehan v. Ryea*, 757 A.2d 467, __ (Vt. 2000)
14. *State ex rel. Britton v. Workman*, 176 W. Va. 586, 346 S.E.2d 562 (1986)

## CERTIFICATE OF SERVICE

    I certify that a copy of the appellant's pleading was faxed to Robin Gulick, Esq., Counsel for the Plaintiff/Appellee, Gulick Carson & Thorpe, PC, 70 Main St # 52 Warrenton, VA via facsimile to 540-347-9711 on this 23rd day of December, 2005.

                      Scott E. Luellen, Appellant/Defendant