BK 0093 PG 1128

VIRGINIA: IN THE CIRCUIT COURT FOR THE COUNTY OF FAUQUIER

TRACEY L. HODGE LUELLEN

    Complainant/Cross-Defendant

VS.                                    CHANCERY NO(S). CH03-166

SCOTT ERIC LUELLEN

    Defendant/Cross-Complainant

## ORDER

Upon the written letter of the Sheriff's Office, the Court ORDERS that the Clerk of this Court issue a <u>capias</u> to the Sheriff of Fauquier County or Any Other Police Officer directing him to apprehend the defendant, Scott Eric Luellen, so the defendant may begin to serve a one hundred fifty (150) day term of incarceration as ordered by this Court on the 6th day of June 2005 and the 23rd day of June 2005.

The Sheriff is directed to enter the capias into N.C.I.C.

Upon compliance of said orders in which the defendant, Scott Eric Luellen, shall pay the sum of $175,164.53, the defendant may be released from incarceration.

A copy of this order shall be forwarded to the defendant, counsel for the complainant and the Sheriff. A copy of the Court's order shall be served on the defendant at the time the capias is executed.

ENTER this __8__ day of December, 2005.

ENTERED DEC 0 8 2005

_____
JEFFREY W. PARKER, JUDGE

JEFFREY W. PARKER, JUDGE

Hearing of Oct 4, 05

1        P-R-O-C-E-E-D-I-N-G-S

2        [The proceedings began at 1:36 p.m.]

3        THE CLERK: In the matter of Tracey L. Hodge Luellen vs. Scott Eric Luellen, Chancery Number CH03-166. Mr. Gulick, attorney for the complainant; Mr. Luellen appearing pro se.

7        THE COURT: Has the court reporter been sworn?

9        THE CLERK: Yes, sir.

10       THE COURT: Mr. Gulick, where do we stand in this matter?

12       MR. GULICK: I put the ball back in Mr. Luellen's court. The funds have not gotten to my account yet.

15       THE COURT: All right. Okay, Mr. Luellen?

16       MR. LUELLEN: Your Honor, I have prepared a written-up statement to the court, if I may hand it over.

19       THE COURT: Have you seen that, Mr. Gulick?

20       MR. GULICK: I have, Your Honor.

21       THE COURT: All right.

22       MR. LUELLEN: The last time we had done one

1   on Friday, and there were material developments over
2   the weekend, so we were hoping to squeeze every day
3   of progress that we could, Your Honor.
4       Your Honor, the three objectives that I took
5   away from the last time we were here was to try and
6   cause one of the investors who was interested to
7   perform and forward the funds. We were successful in
8   doing that. We have a signed contract. We have
9   correspondence from the investor that she's released
10  the money to her intermediary bankers. We have a
11  slew of correspondence, which I have shared with
12  Mr. Gulick.
13      The funds were to post in our account early
14  last week. They have not done so. The investor is
15  in South Africa; the bankers are in Hong Kong. We
16  have been going back and forth to try and find out
17  why they didn't post. At this point we have a lot of
18  correspondence from them saying, we had a problem,
19  it's coming, and here is evidence of that. The fees
20  are paid. The money has been released. The client
21  is insisting the money be released. And I'm happy to
22  answer all the court's questions on that.

```
 1        The second objective was Mr. Clarkson had
 2   agreed in principle to forbear debt and wanted some
 3   time to complete due diligence, review the documents,
 4   review the projects, with the intent being that he
 5   would agree to forbear until such time as either
 6   investment monies were -- came in after the monies
 7   that came in to pay Mrs. Luellen or one the projects
 8   was sold and he could collect his proceed -- his debt
 9   from the proceeds of the project being sold.
10        He has -- he completed his due diligence.
11   He has no problem with that forbearance.  He's
12   articulated that in a letter to Mr. Gulick dated
13   September 30th, which I saw this morning, until the
14   middle of October.  He understands that -- he has
15   been copied on all this correspondence with the
16   investors -- understanding about where the money is,
17   where it's coming from, who it's coming from and, you
18   know, what route it is coming, when it was supposed
19   to be here, when it wasn't supposed to be here, what
20   was the problem with it being here, etc.
21        The third objective was to try and resolve
22   any and all of the outstanding issues in this case.
```

DEC-22-2005 03:55 PM Case 1:05-cv-02464-RJL DOMINION REPORTING Document 2-2   Filed 12/23/2005 540 347 1990 Page 5 of 15   P.04

7

```
 1   And specifically, that involved custody and
 2   visitation. And after what I think has been two and
 3   a half years and three experts, two appointed by the
 4   court --
 5            THE COURT: Well, I'm primarily interested
 6   in the payment of these funds, Mr. Luellen. I'm not
 7   concerning myself with the custody issues that are
 8   presently before the court. We had continued this
 9   matter over because I wanted -- you were supposed to
10   have these monies paid approximately 30 days ago.
11   And without objection, this matter was continued over
12   to today to give you that extra month, because you
13   said you could take care of it in a month.
14            And what I'm hearing right now is that you
15   haven't taken care of it. You haven't paid anything.
16   Is that correct?
17            MR. LUELLEN: We have been waiting on these
18   funds, Your Honor. We have all the correspondence we
19   can give to Your Honor, correspondence from the
20   investors committing to the investment, the signed
21   investment contract, the authorization of her bankers
22   to release the funds. I have been in touch with her
```

```
 1   bankers daily since last week when she said the
 2   buyers would post to us in Washington. They are
 3   responsive, but they work for her, not for me. So
 4   they are most responsive to her.
 5           THE COURT: Well, you know, I'm not really
 6   clear as to all the details of your financial
 7   transactions here, Mr. Luellen, and I didn't think I
 8   really needed to be. This court had sentenced you to
 9   jail, 90 days in jail on the 6th of June, and
10   continued the imposition of that sentence to give you
11   the opportunity to try to cure the contemptuous
12   behavior.
13           And then, on the 23rd of June, you were
14   given 60 more days and an opportunity to cure the
15   contempt by making these payments. And as I
16   understand it right now, these payments haven't been
17   made. Is that right?
18           MR. LUELLEN: That is correct, Your Honor.
19   There have been enormous efforts. As I said, we've
20   had the contract signed. The investor did perform.
21   We have a lot of correspondence confirming that. The
22   funds are not in our receipt. We hoped they would be
```

1    last Monday or Tuesday.

2    We were in correspondence with Mrs. Luellen
3    and Mr. Gulick, you know, wiring instructions to his
4    trust account, and we informed -- we copied them on
5    all the correspondence, this is how the bankers have
6    told us these monies are coming in, this is the
7    number of transactions and the amounts which over a
8    period of time will post, and we copied them
9    completely on everything.

10   And as of Wednesday, when they should have
11   posted last week, they had not posted. So we have
12   spent the last three business days trying to
13   communicate back and forth with Hong Kong and the
14   investors in South Africa, as is she, to find out why
15   they have not come through. Did they initiate the
16   wires? There are Swift tracking numbers that we can
17   confirm that, trace the wires.

18   THE COURT: All right, Mr. Luellen, I think
19   I have heard enough of that. Now let me hear from
20   Mr. Gulick.

21   Mr. Gulick, what is your position in this
22   case?

```
 1         MR. GULICK:  Judge, may I speak to one thing
 2    that the court didn't want to hear about, and I --
 3         THE COURT:  Okay.
 4         MR. GULICK:  I believe that this will be for
 5    the court's benefit.
 6         THE COURT:  All right.
 7         MR. GULICK:  I believe Mr. -- have you
 8    signed that, Mr. Luellen, the decree?
 9         MR. LUELLEN:  I'm happy to sign it.
10         MR. GULICK:  I think we can tender to you a
11    decree that will free up two days this fall, October
12    24th and 25th.
13         THE COURT:  This is on the custody case?
14         MR. GULICK:  Yes, sir.
15         Your Honor, I can tender to the court -- and
16    I have given this to Mr. Luellen.  I received that
17    today.  That deals with one of his obligations.
18    Certainly, all the obligations are important, but if
19    Mr. Clarkson is willing to forbear another 11 days --
20    Your Honor, our position is this.  I understand that
21    sometimes international wires are more difficult than
22    domestic wires.
```

DEC-22-2005 03:55 PM TO DOMINION REPORTING Case 1:05-cv-02464-RJL Document 2-2 Filed 12/23/2005 540 347 1990 Page 9 of 15 P.08

11

```
 1              I would suggest, Your Honor, that in
 2    accordance with Mr. Gordon's letter, that now is
 3    really the time.  And perhaps -- Mr. Luellen knows
 4    how much has to be in my account.  It's $171,164 and
 5    some change.  I would suggest, Your Honor, that
 6    that's either in my account by October 15th or he
 7    report that day.
 8              THE COURT:  Before I come up with that, let
 9    me just double-check this consent decree.
10              Mr. Luellen, is this a consent decree?
11              MR. LUELLEN:  Yes, sir.
12              THE COURT:  You are not signing this under
13    duress from this show-cause proceeding, are you?
14              MR. LUELLEN:  Your Honor, it would be
15    dishonest for me to say that I'm not under duress.
16    Having said that, I did readily and voluntarily sign
17    the decree.
18              THE COURT:  All right.  I just want to make
19    sure.  I don't want this to be -- I mean, you are
20    under a lot of pressure right now, Mr. Luellen, and I
21    would hate to have a situation in which you come back
22    to this court and say, I didn't intend to sign that
```

consent decree, I signed it because I was placed in a position where I couldn't make a voluntary commitment or decision, act, whatever you might call it.

I almost feel like going through one of the guilty plea colloquies here, Mr. Gulick, which you are more than familiar with based on your experience in the criminal court.

MR. GULICK: Your Honor, if I may say something that would allay the court. The timing, maybe, doesn't look that great, but I can tell the court that the negotiations have gone on two tracks for some time. And these negotiations concerning the custody have been independent of the other matters. And it's coincidental that we finally reached the language today.

So I feel comfortable about that, and I think Mr. Luellen would tell you that this decree has not affected our position on this matter at all. So --

THE COURT: Okay.

Is that true, Mr. Luellen?

MR. LUELLEN: Negotiations have gone on

DEC-22-2005 03:51 PM DOMINION REPORTING 540 78944 P.10
Case 1:05-cv-02464-RJL   Document 2-2   Filed 12/23/2005   Page 11 of 15

13

1  regarding a custody settlement, sir, for some time.
2  I don't know what lies in their thinking. There
3  certainly were -- there certainly were negotiations
4  about custody long before these issues arose. And at
5  no time has there been any mention from them, from
6  Mrs. Luellen or from Mr. Gulick, any quid pro quo --
7          THE COURT: All right.
8          MR. LUELLEN: -- to say, if you do this,
9  we'll do this.
10         THE COURT: Well, Mr. Gulick stands in the
11 highest esteem in this court's view, and I have
12 nothing but respect for Mr. Gulick. I don't think he
13 would do something like that. But I want to make
14 sure that it is clear on the record that that's the
15 case.
16         MR. LUELLEN: I understand, sir.
17         THE COURT: All right. Very good. I'll
18 review the decree, but I intend to enter it, assuming
19 it's otherwise satisfactory.
20         That leaves us with the show-cause issue
21 here. Let me take a look at the calendar here for a
22 second. [Reviewing.]

         1          October the 15th is a Saturday, from what I
         2   can see here, Mr. Gulick.
         3          I tell you what I'm going to do here,
         4   Mr. Luellen. You know I don't want to put you in
         5   jail, but this situation has evolved to the point
         6   where I -- you know, you have been dodging bullets
         7   like somebody out of a Matrix movie, all right? And
         8   time is running out, all right?
         9          I tell you what. If this amount isn't in
        10   Mr. Gulick's account by the 18th, I expect you to
        11   report to jail. And if you don't report, I'm going
        12   to issue a capias for you, and it's going to go a lot
        13   worse.
        14          If you do report to jail, I'm going to
        15   review the status of this case on November the 1st
        16   and see where we stand. So I'll have it put on the
        17   docket for review at that point in time if it so
        18   turns out that you have to report to jail. But I
        19   wish you good luck, Mr. Luellen, not only for your
        20   sake, but also for Mrs. Luellen's sake and
        21   Mr. Gulick's sake, to get this matter taken care of.
        22   I don't think you have left me any choice. I have

```
 1   strung this thing out a long time already.  You made
 2   this decision, you signed this deal back in January,
 3   as I recollect in this case.
 4           Mr. Gulick, you prepare the order.
 5           MR. GULICK:  I will, Your Honor.  I take it
 6   the court will dispense with endorsement.
 7           THE COURT:  Yes, sir, I will, although I
 8   would like your endorsement on it, Mr. Gulick.
 9           MR. GULICK:  And that report time on the
10   18th would be 7 p.m.?
11           THE COURT:  I was thinking of 6:30,
12   Mr. Gulick.  Make it 6:30.
13           MR. LUELLEN:  Your Honor, would the court
14   like any of the exhibits that were referenced in the
15   affidavit?
16           THE COURT:  No, I'm going to file this in
17   the record, Mr. Luellen, but -- and, of course, you
18   hold the keys to the jail.  If you report on the 18th
19   and you come up with the money on the 19th, you so
20   advise the court and I'll sign that order of release
21   forthwith.  I'll do everything I can to see that you
22   are released.  I don't want you in jail any longer
```

1  than you have to be, I'll tell you that right now.
2      MR. LUELLEN: Okay.
3      THE COURT: All right.
4      [Whereupon, the hearing was concluded at
5  1:48 p.m.]

```
 1                    CERTIFICATE

 2    State of Virginia      }
                             }  ss:
 3    County of Fauquier     }

 4           I, Debra A. Copeland, Notary Public in and

 5    for the State of Virginia, do hereby certify that I

 6    reported by stenographic and electronic means the

 7    hearing styled on the title sheet hereof, taken at

 8    the time and place shown and that the foregoing pages

 9    constitute a true and accurate transcript of said

10    hearing, to the best of my ability.

11           I further certify that I am not related to

12    any of the parties, nor am I employed by or related

13    to any of the attorneys representing the parties, and

14    I have no interest in the outcome of this matter.

15           GIVEN under my hand this 17th day of

16    October, 2005.

17

18                                _____
                                         Notary Public
19
      My commission expires:
20
      June 30, 2006.
21

22
```